IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| In re: Motion to Disclose Intercepted Communications | ) ) ) |
| UNITED STATES OF AMERICA | ) No. 08 CR 1010 ) |
| v. | ) ) |
| ROD BLAGOJEVICH and JOHN HARRIS | ) ) ) |

MEMORANDUM OPINION AND ORDER

JAMES F. HOLDERMAN, Chief Judge:

The United States of America (the "government") on December 29, 2008, filed a Motion to Disclose Intercepted Communications to the Special Investigative Committee of the Illinois House of Representatives (Dkt. No. 16) in this case. In this pending motion, the government requests authorization to disclose to the members of the Special Investigative Committee four recorded phone communications, in redacted form, that agents of the Federal Bureau of Investigation electronically intercepted during their investigation into allegations of corruption against Illinois Governor Rod R. Blagojevich. For the reasons set forth in this Memorandum Opinion and Order, I grant the government's motion.

Background

On December 9, 2008, agents of the Federal Bureau of Investigation arrested Illinois Governor Rod R. Blagojevich pursuant to a criminal complaint filed in this case. That complaint charged defendant Blagojevich with two counts of alleged criminal conduct: one count of conspiring to defraud the citizens of Illinois of their right to his honest services in violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341, 1343, 1346, and 1349, and one count of

corruptly soliciting and demanding the firing of Chicago Tribune editorial board members who had been critical of defendant Blagojevich, in exchange for the awarding of millions of dollars in financial assistance from the State of Illinois in violation of 18 U.S.C. §§ 666(a)(1)(B) and 2. For a period of time prior to the filing of the criminal complaint in this case, the government, as part of its investigation into defendant Blagojevich's activities, sought and received court authorization to use wire and electronic surveillance to intercept communications over the residential phone of defendant Blagojevich and the cellular phone of "Lobbyist 1." Evidence derived from those court-authorized electronic interceptions formed, in part, the basis of the government's complaint against defendant Blagojevich.

      Within days of defendant Blagojevich's arrest, the Illinois House of Representatives adopted House Resolution 1650, creating a Special Investigative Committee "for the purpose of (i) investigating allegations of misfeasance, malfeasance, nonfeasance, and other misconduct of Governor Rod R. Blagojevich and (ii) making a recommendation as to whether cause exists for impeachment." H.R. Res. 1650, 95th Gen. Assem., Reg. Sess. (Ill. 2008). The resolution required the Committee, which was composed of twenty-one members of the Illinois House of Representatives, to submit a report of its findings to the full House before the expiration of the 95th Illinois General Assembly. *Id.* In furtherance of their duties, the members of the Special Investigative Committee in a letter dated December 18, 2008, requested that the government disclose various materials acquired during the government's investigation of defendant Blagojevich, including the communications intercepted by the court-authorized electronic surveillance, but before the Committee received the intercepted communications, the Committee issued a 61-page Final Report to the House of the 95th Illinois General Assembly. The Final

Report found that the totality of the evidence warranted impeachment of defendant Blagojevich for cause and recommended that the House of Representatives consider an Article of Impeachment against defendant Blagojevich.  The next day the House impeached defendant Blagojevich.  The 95th Illinois General Assembly expired at midnight on January 14, 2009.

In response to the Special Investigative Committee's December 2008 request for disclosure of the government's investigative materials, the government has applied to me for authorization to disclose to the members of the Special Investigative Committee four specific intercepted communications, in redacted form, under 18 U.S.C. § 2517.  The four communications the government seeks to disclose relate to paragraph 68(e) of the criminal complaint and are alleged by the government to be conversations of defendant Blagojevich and other interceptees.  The government, in accordance with my order of December 24, 2008, provided notice to the interceptees of its motion to disclose the electronically intercepted communications, and on January 8, 2009, I granted the interceptees until noon on January 23, 2009, to file motions to suppress disclosure of the communications.  (Hr'g Tr. 38-39, Jan. 8, 2009.)

The interceptees have now had an opportunity to review copies of the four recordings that are the subject of the government's motion as well as an opportunity to respond to the government's motion.  Neither defendant Blagojevich nor the other interceptees object to the redactions, and the person identified as "Lobbyist 1," who has identified himself as "Unindicted, Unidentified Interceptee," takes no position on the redactions.  (Hr'g Tr. 4.)  None of the interceptees have filed motions to suppress disclosure of the intercepted communications despite representations by three of the interceptees, including defendant Blagojevich, that they intended

3

to object. (Hr'g Tr. 4-5.) Robert Blagojevich, defendant Blagojevich's brother, filed a document informing the court that he has decided not to file a motion to suppress at this time. (Dkt. No. 48.) The "Unindicted, Unidentified Interceptee" and defendant Blagojevich filed documents entitled "Position Papers," which set forth their positions in opposition to disclosure of the four redacted recordings on the grounds that the government's motion is moot and that preparation of motions to suppress could not be timely completed. (Dkt. Nos. 49 & 51.)

Today, the government supplemented its request to disclose the electronically intercepted communications. The documents submitted by the government show that, following expiration of the 95th Illinois General Assembly, the House of the newly-convened 96th Illinois General Assembly reconstituted the Special Investigative Committee for the purpose of continuing the investigation of defendant Blagojevich:

> WHEREAS, The work of the Special Investigative Committee is ongoing, and the Committee may be required to take further evidence, in the form of testimony or documents or other materials . . .
>
> \* \* \*
>
> RESOLVED, That the Special Investigative Committee shall have the authority, duties, and purposes as set forth in House Resolution 1650 of the Ninety-Fifth General Assembly, including the purposes of investigating allegations of misfeasance, malfeasance, nonfeasance, and other misconduct of Governor Rod R. Blagojevich and making a recommendation as to whether cause exists for impeachment, and shall further have the authority and duty to refer any further evidence the Committee may acquire to the House Prosecutor who is designated to prosecute in the impeachment trial of Governor Rod R. Blagojevich before the Illinois Senate . . . .

H.R. Res. 0004, 96th Gen. Assem., Reg. Sess. (Ill. 2009). The documents also show that, by letter dated January 22, 2009, the Chair of the Special Investigative Committee reaffirmed the Committee's request for the intercepted communications.

The government, which expressly took no position on whether the Special Investigative Committee should recommend impeachment, presents in its motion only questions of law. The primary question is whether the Special Investigative Committee is qualified to receive disclosure of, and thereafter to use, the copies of the four redacted recordings pursuant to 18 U.S.C. § 2517(1) and (2). For the reasons set forth below, the court finds that the members of the Special Investigative Committee are and remain investigative officers to whom the government may disclose copies of the four redacted recordings of the electronically intercepted communications.

<u>Analysis</u>

Ordinarily recordings of communications intercepted by the government are not disclosed before an indictment is returned against a criminal defendant. This case, however, is exceptional and comes before me in this pre-indictment setting, as the Chief Judge of the United States District Court for the Northern District of Illinois, pursuant to my authority to hear "[a]ll requests for authorization for interceptions of wire and oral communications or other investigatory matters arising under Chapter 119 of Title 18 of the U.S. Code." N.D. Ill. L. Cr. R. 50.2(2).

I. <u>The Special Investigative Committee is Qualified to Receive Redacted Copies of the Intercepted Communications.</u>

The question of whether telephonic communications of a sitting state governor, electronically intercepted by the government, may be disclosed during the post-complaint, pre-indictment stage of a federal criminal proceeding to a state legislative committee convened to investigate the governor and make a recommendation on the governor's impeachment is unprecedented.

5

>   Even so, the court is not without guidance. Section 2517(1) of Title 18 provides that:
>
>   Any investigative or law enforcement officer who, by any means authorized by this chapter, has obtained knowledge of the contents of any wire, oral, or electronic communication, or evidence derived therefrom, may disclose such contents to another investigative or law enforcement officer to the extent that such disclosure is appropriate to the proper performance of the official duties of the officer making or receiving the disclosure.

18 U.S.C. § 2517(1). Section 2510(7) defines "investigative or law enforcement officer" as "any officer of the United States or of a State or political subdivision thereof, who is empowered by law to conduct investigations of or to make arrests for offenses enumerated in this chapter, and any attorney authorized by law to prosecute or participate in the prosecution of such offenses." 18 U.S.C. § 2510(7). And, according to at least one federal appellate court, disclosure under section 2517(1) does not require prior judicial approval so long as the mandates of Title 18, Chapter 119 have been met. *In re Grand Jury Proceedings*, 841 F.2d 1048, 1052 (11th Cir. 1988).

There is also guidance in federal case law. Although the United States Court of Appeals for the Seventh Circuit has never had occasion to consider whether members of a state legislative committee convened to investigate allegations of misconduct against the state's governor are investigative officers under section 2510(7), appellate courts from two other federal circuits have addressed questions similar to the one raised by the government's motion. In *In re Grand Jury Proceedings*, 841 F.2d 1048 (11th Cir. 1988), the United States Court of Appeals for the Eleventh Circuit concluded that the United States House Judiciary Committee, which was vested with impeachment power, was qualified to receive disclosure of communications intercepted by federal wiretap in connection with its investigation into allegations of judicial misconduct against a federal judge. In reaching its conclusion, the Eleventh Circuit summarily explained

that "under these circumstances (impeachment proceedings) the Committee falls within the definition of 'investigative officer' contained within 18 U.S.C. § 2517(1)." *Id.* at 1054.

Likewise, in *In re Electronic Surveillance*, 49 F.3d 1188 (6th Cir. 1995), the United States Court of Appeals for the Sixth Circuit determined that investigative personnel for the Michigan Attorney Grievance Commission were qualified to receive disclosure of communications intercepted by federal wiretap in connection with their investigation into allegations of attorney misconduct.  In a very thorough analysis, the Sixth Circuit instructed that, in deciding whether a state commission and its personnel are empowered to conduct investigations, and thus are qualified to receive disclosures under section 2517, the court must engage in a two-step inquiry. *Id.* at 1190.  First, the court must determine whether the commission is "empowered by law to conduct investigations." *Id.*  Second, the court must determine whether the commission is "empowered to conduct investigations of offenses enumerated in Chapter 119." *Id.* at 1191.  In determining whether a commission is authorized to conduct investigations, the court may look to the state's definition of the commission's role. *Id.* at 1190.  After applying the two-step analysis, the Sixth Circuit concluded that the Michigan Attorney Grievance Commission was authorized by state law to conduct investigations into attorney misconduct, including conduct that violated the criminal laws of the United States, and thus the commission's personnel were investigative officers as defined by section 2510(7) who were authorized to receive disclosures under section 2517(1) for use in the performance of their official investigative duties. *Id.* at 1191-92.

In this case, the twenty-one legislative members of the Illinois House of Representatives Special Investigative Committee meet the definition of "investigative or law enforcement

officer[s]" in 18 U.S.C. § 2510(7).  Article IV of the Illinois Constitution provides that:  "The House of Representatives has the sole power to conduct legislative investigations to determine the existence of cause for impeachment."  Ill. Const. art. IV § 14.  And the resolution establishing the Special Investigative Committee defines, in pertinent part, the Committee's role as:  "(i) investigating allegations of misfeasance, malfeasance, nonfeasance, and other misconduct of Governor Rod R. Blagojevich."  H.R. Res. 1650, 95th Gen. Assem., Reg. Sess. (Ill. 2008); *see* H.R. Res. 0004, 96th Gen. Assem., Reg. Sess. (Ill. 2009).  Thus, given the state's definition of the Committee's role, the members of the Special Investigative Committee are empowered by law to conduct investigations, and it is undisputed that the members of the Committee requested disclosure of the intercepted communications for use in the their official legislative investigation.

      The members of the Special Investigative Committee are also empowered to conduct investigations of offenses enumerated in 18 U.S.C. § 2516, which sets forth a comprehensive list of offenses for which the government may seek authorization for electronic surveillance.  In this case, the members of the Special Investigative Committee are authorized to investigate the general "misfeasance, malfeasance, nonfeasance, and other misconduct of Governor Rod R. Blagojevich."  H.R. Res. 1650; *see* H.R. Res. 0004.  The investigative authority granted to the members of the Special Investigative Committee by House Resolution 1650 therefore is broad enough to encompass those violations of the federal criminal code listed in section 2516.

      Moreover, the function of the Special Investigative Committee is similar to the function of the United States House of Representatives Judiciary Committee in *In re Grand Jury Proceedings*, 841 F.2d 1048 (11th Cir. 1988).  Like the House Judiciary Committee, which was

8

authorized to investigate allegations of misconduct in connection with the potential impeachment of a federal judge, the Special Investigative Committee is authorized to investigate allegations of misconduct in connection with the impeachment of Governor Blagojevich. Although the disclosures made in *In re Grand Jury Proceedings* involved only federal investigative officers, section 2510(7) and *In re Electronic Surveillance*, 49 F.3d 118 (6th Cir. 1995), establish that disclosures may be made between federal and state investigative officers. Accordingly, because the members of the Special Investigative Committee are and remain authorized by law to conduct investigations into the misconduct of defendant Blagojevich in connection with his impeachment, including conduct that violated the criminal laws of the United States, the members of the Special Investigative Committee are investigative officers as defined by section 2510(7) and thus are qualified to receive disclosures under section 2517(1) for use in the performance of their official duties.

II.     No Basis Exists to Preclude the Requested Disclosure.

Defendant Blagojevich and the "Unindicted, Unidentified Interceptee," also known as "Lobbyist 1," assert that the government's motion is mooted by the Illinois House of Representatives' vote to impeach defendant Blagojevich as the Governor of the State of Illinois.

The government's motion is not moot because the Special Investigative Committee's authority to investigate defendant Blagojevich's alleged misconduct is ongoing. Specifically, the 96th Illinois General Assembly has explicitly recognized the need for the members of the Special Investigative Committee to continue their investigation and has authorized them to take further evidence as necessary. Consequently, both the Special Investigative Committee and the

investigation conducted by its members survive the expiration of the 95th Illinois General Assembly as well as the Illinois House of Representatives' decision on impeachment.

I have also considered the "Position Paper" filing of defendant Blagojevich (Dkt. No. 49) and the "Unindicted, Unidentified Interceptee" (Dkt. No. 51) and the reasons set forth in those documents explaining why no motions to suppress were filed at this time.  Interceptee Robert Blagojevich stated in his separate filing of January 21, 2009, merely that he decided not to file a motion to suppress at this time.  (Dkt. No. 48.)

The "Position Papers" filed by defendant Blagojevich on January 22, 2009 (Dkt. No. 49) and filed by the "Unindicted, Unidentified Interceptee" today (Dkt. No. 51) can be summarized by quoting paragraphs 12, 13 and 14 on page 4 of defendant Blagojevich's "Position Paper":

> 12.    Filing of a cogent and complete Title III suppression motion is [a] labor-intensive undertaking.  Competent counsel must, for example, listen to all the recordings and analyze all the underlying Title III materials.  That cannot be accomplished without the recordings or other materials within the time-frame presently set.
>
> 13.    Governor Blagojevich appreciates the opportunity provided by the Court.  But the issue is moot and a complete suppression motion cannot be formulated with the materials that have been provided by the government to date.
>
> 14.    Importantly, by not bringing a motion at this date, Governor Blagojevich does not intend to waive any of his rights under Title III, United States Constitution, the United States Code or the Federal Rules of Criminal Procedure, including rights that vest after indictment, e.g., the right to receipt of Title III materials and the right to bring a pretrial suppression motion.

(Dkt. No. 49 at 4.)

Taking the point in paragraph 14, first, all of defendant Blagojevich's rights, as well as the rights of all interceptees under Title III, the United States Constitution, the United States Criminal Code, and the Federal Rules of Criminal Procedure, including the right to receive

discovery and the right to file a pretrial suppression motion, are preserved should an indictment be returned by the grand jury charging them with federal crimes.

As for defendant Blagojevich and the "Unindicted, Unidentified Interceptee" not filing any motions to suppress, I firmly believe that the time allotted for such filings was adequate in this pre-indictment setting. As I have stated before, I scrutinized the government's conduct regarding the electronic surveillance employed in this investigation during the course of this investigation. As Chief Judge, I am entrusted with the duty in connection with all government investigations, where the evaluation of an independent judicial officer is required, to protect the rights of all persons and entities under investigation against improper government conduct. I take that obligation seriously in every matter over which I preside, and have done so here. Consequently, I am well aware of the procedures followed by the government in this investigation. Based upon that, I firmly believe there has been compliance with the law.

Defendant Blagojevich has presented no meritorious basis to preclude the disclosure of those four redacted recordings.

## Conclusion

For the reasons stated above, the requested disclosure of copies of the four redacted recordings that are the subject of the government's Motion to Disclose (Dkt. No. 16) and Supplement to the Motion to Disclose (Dkt. No. 52) is granted. Copies of the four redacted recordings and transcripts may be disclosed by the government to the members of the Special Investigative Committee as requested, to be used and, if appropriate, made public in the

impeachment trial of Governor Rod R. Blagojevich as allowed by the rules thereof. The government is allowed to provide redacted copies thereof for that purpose immediately.

        Entered:

        _____
        James F. Holderman
        Chief Judge

Dated: January 23, 2009